IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INPHONIC, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>JEHAD EDWAN,<br><br>      Defendant. | Case No.: 1:05-CV-02206<br><br>**BRIEF IN SUPPORT OF MOTION TO DISMISS OR TRANSFER VENUE** |

## I. BACKGROUND

The Plaintiff, InPhonic, Inc., a Delaware corporation brought this action against the Defendant, Jehad Edwan for trademark infringement in the United States District Court for the District of Columbia. The complaint alleged that Defendant infringed on an InPhonic trademark, which covers sale of mobile phones and telecommunication equipment.[1] The complaint further alleged that Defendant is a resident of Nebraska, and that the district court has venue because "a substantial part of the events or omissions giving rise to the claim occurred in the District and harm has been caused to Plaintiff's intellectual property that is situated in this District." (Complaint, at ¶¶ 3, 4).

Defendant is moving dismiss for lack of personal jurisdiction and improper venue, or, in the alternative, to transfer this case to the District of Nebraska pursuant to 28 U.S.C. § 1404." (Filing No. 6 - Motion to Dismiss, at 1). Attached to the motion is the affidavit of Jehad Edwan, the Defendant herein. Defendant stated in his affidavit that he is a resident of Nebraska. Defendant operates the website that is subject matter of the complaint, but is not doing so for

---

[1] Notwithstanding Plaintiff's assertions in its complaint that it sells telecommunication products under the Wirefly trademark (Complaint, at ¶ 8), Plaintiff's registration, attached thereto as Exhibit 1, shows that the mark is registered for the purpose of creating, designing, and hosting websites.

profit, and has no connection Washington, D.C. Defendant also stated that he is indigent and would thus be unduly prejudiced if he had to defend himself in the district. (Defendant's Affidavit, at ¶¶ 3-5).

Defendant further stated that he is not in the business of selling any product or service and does not compete with InPhonic.[2] Defendant, having been a victim of InPhonic's trade practices, created a website containing information critical of InPhonic, which website features a bulletin board for anyone to post their opinion about InPhonic's trade practices. Defendant is not the only person on the internet claiming that InPhonic engages in questionable, if not illegal trade practices. Numerous others are making such claims. Defendant's website, however, is consistently ranked highly in Google™ searches. Defendant maintains that he is validly exercising his First Amendment Right to speak negatively of InPhonic, while InPhonic claims that such actions violate trademark and unfair competition laws.

## II. ISSUES

The threshold questions with regard to Defendant's motions are as follows:

A. Does the D.C. Federal District Court have jurisdiction over a Defendant in Nebraska simply because he maintains a website accessible from all over the world?

B. Is venue proper when the Defendant is located in Nebraska, the acts complained of were committed in Nebraska, and key witnesses and evidence are located in Nebraska?

---

[2] Exhibit 3, and 4, attached to Plaintiff's Complaint clearly demonstrate the nature of Defendant's website, which is was not created for commercial purposes.

## III. ANALYSIS

A. Jurisdiction

The determination whether a district court has personal jurisdiction over a defendant generally involves two inquiries. First, does jurisdiction exist under the state long-arm statute? See, e.g., Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1200 (Fed. Cir. 2003); Deprenyl Animal Health, Inc. v. U. of Toronto Innovations, 297 F.3d 1343, 1349-50 (Fed. Cir. 2002); Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir. 2002); Inamed Corp. v. Kuzmak, 249 F.3d 1356, 1359 (Fed. Cir. 2001).

Second, if such jurisdiction exists, would its exercise be consistent with the limitations of the due process clause? See, e.g., Silent Drive, 326 F.3d at 1201; Inamed, 249 F.3d at 1359-60. Sometimes these two inquiries are collapsed into one because the reach of the state long-arm statute is the same as the limits of the due process clause. Inamed, 249 F.3d at 1360 (noting that California long-arm statute is coextensive with limits of due process); see also Deprenyl, 297 F.3d at 1350 (discussing Kansas long-arm statute); HollyAnne Corp. v. TFT, Inc., 199 F.3d 1304, 1307 (Fed. Cir. 1999) (discussing Nebraska long-arm statute).

There are two kinds of personal jurisdiction: specific and general. "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.' General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." LSI Indus. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000).

The District of Columbia permits courts to exercise general jurisdiction over a nonresident for claims that do not arise from the nonresident's conduct within the District, if the

nonresident is "doing business" in the District and its business contacts are "continuous and systematic." Gorman v. Ameritrade Holding Corp., 293 F.3d 506, 509-10 (D.C. Cir. 2002); see also D.C. Code § 13-334(a) (2004) (governing service of process on foreign corporations in the District). The reach of general jurisdiction in the District of Columbia under section 13-334(a) is "coextensive with the reach of constitutional due process." Gorman, 293 F.3d at 510 (citing Hughes v. A.H. Robins Co., 490 A.2d 1140, 1148 (D.C. 1985).

Specific personal jurisdiction depends upon the District of Columbia long-arm statute, the relevant sections of which provide that:

> (a) A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's –
>> (1) transacting any business in the District of Columbia;
>>
>> …
>>
>> (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
>>
>> (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
>>
>> …
>
> D.C. Code § 13-423(a) (2004).

To establish specific personal jurisdiction under the District long-arm statute, InPhonic would have to demonstrate either (1) that its claims arose from Defendant's transacting business in the District of Columbia (subsection (a)(1)), see Heroes, 958 F. Supp. at 2-5; or (2) that Defendant caused it tortious injury in the District by its conduct in the District (subsection (a)(3)); or (3) that Defendant caused it tortious injury in the District by its conduct outside the District and that Defendant "regularly does or solicits business" in the District, "engages in any

other persistent course of conduct" there, or "derives substantial revenue" from goods used or services rendered there (subsection (a)(4)), see Heroes, 958 F. Supp. at 5-6.

InPhonic relies solely on Defendant's use of his own website, which InPhonic alleges is accessible to persons in the District of Columbia. However Defendant's website is not directed particularly at persons in the District of Columbia, but instead is available to all persons throughout the country, and around the world who have access to the Internet. The ability of District residents to access the defendants' website does not by itself show any persistent course of conduct by the Defendant in the District. GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1349 (D.C. Cir. 2000); see also Gorman, 293 F.3d 512 & n.5 (discussing the lack of specific jurisdiction in GTE and similar cases involving "essentially passive" websites).

Some cases have suggested that the availability and use of a highly interactive, transaction-oriented website (as opposed to an "essentially passive" website) by itself may support long-arm jurisdiction wherever the site is available to potential customers for the purpose of doing business. See, e.g., Gorman, 293 F.3d at 510-13 (discussing general personal jurisdiction based on interactive financial brokerage website); Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1125-26 (W.D. Pa. 1997) (asserting personal jurisdiction under Pennsylvania's long-arm statute based on subscription news service website). Unlike the websites in those cases Defendant's website contains no interactive features aimed at transacting business. The purpose of the website is to complain and commiserate with others about InPhonic, not to conduct business.

Other cases have indicated that something additional beyond a website is required to establish personal jurisdiction. GTE, 199 F.3d at 1346 (holding that personal jurisdiction could not be based upon "mere accessibility to an Internet site in the District" where defendants had

"no other contacts with the District of Columbia"). The decision under this rubric is also clear, since InPhonic relies solely on Defendant's website as the basis for jurisdiction.

InPhonic also alleges that Defendant's website contained advertising by third parties, but those sites would support jurisdiction only if Defendant had some responsibility for the third party's advertising on his website. See, e.g., Jung v. Ass'n of Am. Med. Colls., 300 F. Supp. 2d 119, 132 n.5 (D.D.C. 2004) (distinguishing cases where personal jurisdiction is based upon defendant's activities on its own website from situation where third party's website was used); GTE, 199 F.3d at 1352 (indicating the importance of "know[ing] for certain which defendants own and operate which websites" in determining jurisdiction). Although Defendant's website initially featured Google Ads for a short period of time, he had no control over those Ads, which were not even in competition with InPhonic.[3] At any rate, InPhonic admits that Defendant discontinued such advertising. (Complaint, at ¶ 17). The sole purpose of Defendant's website is to complain about InPhonic's practices, not to sell products, or even third-party advertising for that matter. As such, there are simply no minimum contacts in this case.

If the court rules that it has personal jurisdiction under the District's long-arm or service of process statute, such jurisdiction in this case would not be consistent with due process under this circuit's standards enunciated in Akro Corp. v. Luker, 45 F.3d 1541, 1545 (Fed. Cir. 1994), cited in Silent Drive, 326 F.3d at 1201, and Inamed, 249 F.3d at 1360. Assuming, *arguendo*, that Plaintiff established minimum contacts, the assertion of jurisdiction can still be unfair. See Akro Corp. v. Luker, 45 F.3d 1541, 1547 (Fed. Cir. 1995); Burger King Corp v. Rudzewicz, 471 U.S.

---

[3] Before they were removed, Defendant's benefits from the Google Ads were *de minimis* at best, and he had no control over the nature of the Ads or the links provided. Still, Exhibits 3 and 4, attached to Plaintiff's Complaint, show clearly that such Google Ads pointed to consumer protection websites, not telecommunication sales.

462, 477 (1985). The standards to be used are the traditional notions of fair play and substantial justice. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113 (1987).

In this unique case, the Defendant would suffer if he had to litigate a case that affects his fundamental right of free speech in a faraway forum. While Defendant is an individual with limited means, Plaintiff is a large and powerful corporation, with the ability to prosecute the case anywhere in the country, or the entire world for that matter. Plaintiff, on the other hand, would have to go to great lengths to vindicate his constitutional rights, and would not be able to defend himself adequately in the District.[4]

In addition, the District has no more interest in this case than any other forum. The policy question in this case involves balancing the rights of ordinary consumers to complain against companies' unfair practices. While this is an important question involving important rights, the information age has made it a question of interest for all states. Moreover, federal courts in Nebraska are capable of handling such cases effectively and reaching a fair disposition. After all, the website in question was created here in Nebraska, where the Defendant, key witnesses, and all the evidence are also located.

Resolving the issue in a light most favorable to the Plaintiff, the burden to the Defendant is so overwhelming that it outweighs any legitimate interests of the Plaintiff and the forum state. At most, InPhonic might suffer a minor inconvenience, while Defendant's defense would literally be crippled if he had to litigate the case in the District. Under these circumstances, the assertion of jurisdiction over the Defendant would be unfair and unreasonable.

---

[4] Defendant who is indigent is being represented pro bono by an attorney in Omaha, Nebraska. (Filing No. 3, at 1). Defendant cannot afford to pay legal fees, let alone travel fees to and from the District for hearings and trial. The Defendant is also a key witness in this case.

B. Venue

    Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404 (a). The Court must focus on certain private and public-interest factors in order to determine the proper forum for the litigation of this case. See Liban v. Churchey Group II, L.L.C., No. Civ. A. 03-242, 2004 WL 360285 at 4 (D.D.C. Feb. 26, 2004).

    In McClamrock v. Eli Lilly & Co., 267 F. Supp. 2d 33 (D.D.C. 2003), this Court reiterated that the private considerations that may be considered include: (1) the Plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the Defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the Plaintiff and Defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof. Id. at 37.

    The Court's first consideration is the degree of deference that should be given to the Plaintiffs' choice of forum. This Court has previously held that it will not "mechanically" apply the first-to-file rule, but will carefully consider "equitable considerations genuinely relevant to the ends of justice." *Lewis v. NFL,* 813 F. Supp. 1, 4 (D.D.C. 1992). Where Plaintiff has no connection whatsoever to the District of Columbia, and the dispute itself has no real connection to the District of Columbia, then the traditional preference given to Plaintiff's choice of forum is greatly diminished. In this case, the Plaintiff's home forum is inadequate since Defendant, who has no connection with the District, would have to go to great lengths to vindicate his basic rights. Plaintiff, on the other hand, can be adequately and easily represented in Defendant's home

state in a neutral federal forum. Balancing the different interests, the District of Nebraska is the more appropriate venue for the litigation of this case.

Another consideration is where the claim arose. The Plaintiff can argue that the claim arose in the District because persons from the District can access Defendant's website and because Plaintiff was allegedly damaged in the District. However, the Plaintiff makes no allegation that Defendant is connected in any other way with the District. Since all the actions and decisions underlying Plaintiffs' claims took place in Omaha, Nebraska, the claims 'arose' there for the purposes of venue analysis. Thus, while the Plaintiff, a Delaware corporation, may have suffered damages in the District because of actions that took place in Nebraska, the latter is the location where the claims arose. In addition, key witnesses, such as the Defendant himself, and all the documents and instrumentalities subject to the dispute, are located in Nebraska.

The Court must also take certain public interest factors into consideration in determining the proper forum for this case. The public interest factors courts have taken into consideration include "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts; and (3) the local interest in deciding local controversies at home." Liban, supra. Federal Courts in Nebraska are capable of interpreting and applying all the federal and common law claims involved in this case. Plaintiff has not asserted any statutory or common law causes of action that are unique to the District. There is also no question that the relative congestion of the courts' calendars is significant in this situation. Accordingly, the transfer of this matter to the District of Nebraska pursuant to 28 U.S.C. § 1404 (a) is appropriate.

## CONCLUSION

In light of the foregoing, Defendant prays that the Court dismisses Plaintiff's action, or in the alternative, for venue to be transferred to the United States District Court for the District of Nebraska.

Dated this 30th day of November, 2005

By: /s/
Bassel El-Kasaby # 22315
The Empire State Bldg.
300 S. 19th Ste 212
Omaha, NE 68102
Ph: 402-884-0700
Fx: 402-614-5926

## CERTIFICATE OF SERVICE

I hereby certify that on December 1, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notifications of such filing to all attorneys of record in this case.

/s/
-----------------------------------
Bassel El-Kasaby