**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

- - - - - - - - - - - - - - - - - - - - - - - - - - - X
INPHONIC, INC.,                         :
        Plaintiff,                   :
        v.                           :    Case No. 1:05-CV-02206  (RWR)
JEHAD EDWAN,                            :
        Defendant.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION**
**TO DISMISS OR TRANSFER VENUE**

Plaintiff InPhonic, Inc. ("InPhonic") respectfully submits this Memorandum in

Opposition to Defendant Jehad Edwan's Motion to Dismiss for Lack of Jurisdiction and

Improper Venue or For Transfer.  InPhonic requests that this Court deny Defendant's

Motion.  In support thereof, and incorporating by reference the facts as alleged in its

Complaint, InPhonic states:

**INTRODUCTION**

Defendant Edwan seeks to use the Internet as a shield from this Court's

jurisdiction, claiming that he undertook no acts in the District.  Yet Defendant is using

the Internet as a tool for infringing and diluting InPhonic's WIREFLY mark and for

confusing and intentionally diverting InPhonic's customers.  As stated in the Complaint,

Plaintiff InPhonic, a local D.C. company, sells cell phones and related services under its

3908922v5

WIREFLY trademark and at its website www.wirefly.com. Defendant Edwan is using Plaintiff's WIREFLY trademark in his domain name and to attract consumers to Defendant's website at www.wirefly-rebate.com. Edwan's website does not sell InPhonic products or services, or inform consumers about how to obtain rebates offered by Plaintiff. Rather, the wirefly-rebate.com website is confusing consumers, diverting consumers looking for real WIREFLY products and information, and is causing significant harm to Plaintiff InPhonic in the District. Defendant's arguments that the Court lacks jurisdiction over Edwan, an individual residing in Nebraska, are unfounded.

It is well settled that law governing personal jurisdiction, including the Supreme Court's "effects test" under *Calder v. Jones*, 465 U.S. 783 (1984), applies equally to torts committed via the Internet. Indeed, as Judge Garland of the United States Court of Appeals for the District of Columbia Circuit recently observed, "cyberspace...is not some mystical incantation capable of warding off the jurisdiction of courts built from bricks and mortar." *Gorman v. Ameritrade*, 293 F. 3d 506, 511 (D.C. Cir. 2002). Here, the operation of Edwan's website, which infringes InPhonic's mark and misleads consumers, is sufficient to confer personal jurisdiction over Edwan. Indeed, both the major purpose and the primary effect of Edwan's infringing website has been to harm InPhonic in the District of Columbia, rendering his jurisdictional protestations specious at best.

## **ARGUMENT**

### I.    **THIS COURT MAY PROPERLY EXERCISE PERSONAL JURISDICTION OVER EDWAN.**

In considering a motion to dismiss pursuant to F.R.C.P. 12(b)(2) for lack of personal jurisdiction, a court must presume "facts asserted by the plaintiff in his Complaint ... to be true unless directly contradicted by affidavit." *See Dooley v. United Technologies Corp.*, 786 F.Supp. 65, 70 (D.D.C. 1992). "Where the parties are limited to written submissions, such as affidavits, the plaintiff need make only a prima facie showing to prevail on a motion to dismiss for want of jurisdiction." *Id.* at 70, citing *Chase v. Pan-Pacific Broadcasting, Inc.*, 617 F.Supp. 1414 (D.D.C.1985). In this case, InPhonic has succeeded in making a prima facie showing of jurisdiction.

The issue of personal jurisdiction entails a two-part analysis. The court must determine whether personal jurisdiction over the defendant comports with (1) the forum state's long-arm statute and (2) the requirements of the due process clause of the Fourteenth Amendment to the United States Constitution. *See Koteen v. Bermuda Cablevision, Ltd.*, 913 F.2d 973, 975 (D.C. Cir. 1990). Because the District of Columbia's long-arm statute, codified at D.C. Code § 13-423, "does not reach the outer limits of due process," if jurisdiction is found under that statute, "it follows that there are also sufficient minimum contacts to satisfy due process." *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987). Therefore, the only question is whether the requirements of D.C.'s long-arm statute are met. The answer clearly is yes.

The applicable long-arm statutory provision here is D.C. Code § 13-423(a)(4), which provides:

3

3908922v5

A District of Columbia court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia.

D.C. CODE § 13-423(a)(4) (2001).  Thus, to establish personal jurisdiction under Section 13-423(a)(4), three elements must be satisfied: (1) plaintiff must suffer tortious injury in the District; (2) the act or omission causing the injury must occur outside the District; and (3) at least one of the statute's three "plus factors" must be present.  *Blumenthal v. Drudge*, 992 F. Supp. 44 (D.D.C. 1998).  InPhonic has met all three elements.

*First*, it cannot be disputed that InPhonic is suffering tortious injury in the District as result of Edwan's cybersquatting and trademark infringement: InPhonic is headquartered in the District.  *See Telco Communications Group, Inc. v. An Apple a Day, Inc.*, 977 F.Supp. 404, 408 (E.D.Va. 1997) ("because Telco is located here, the firm absorbed the harm here"); *Amway Corp. v. The Procter Gamble Co.*, No. 1:98-CV-726, 2000 U.S. Dist. LEXIS 372, *14 (W.D. Mich. Jan. 6, 2000) (plaintiff sustained the brunt of the harm in Michigan because plaintiff's headquarter is in Michigan).

*Second*, Edwan has admitted that the act or omission causing the injury (i.e. creation and operation of the subject website) occurred outside the District, specifically in Nebraska.  *See* Motion at 7.

*Third*, the requisite "plus" factors are present here.  Edwan has engaged and continues to engage in "persistent course of conduct" in the District through the operation of his website, which intentionally aims at causing harm to plaintiff headquartered in the District.  As one court

4

explained in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D.Pa. 1997), cited

with approval in *Blumenthal v. Drudge*, 992 F.Supp. 44, 56 (D.D.C. 1998):

> [T]he likelihood that personal jurisdiction can be constitutionally
> exercised is directly proportionate to the nature and quality of
> commercial activity that an entity conducts over the Internet. This
> sliding scale is consistent with well developed personal jurisdiction
> principles. At one end of the spectrum are situations where a
> defendant clearly does business over the Internet. If the defendant
> enters into contracts with residents of a foreign jurisdiction that
> involve the knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper. At the opposite end
> are situations where a defendant has simply posted information on an
> Internet Web site which is accessible to users in foreign jurisdictions.
> A passive Web site that does little more than make information
> available to those who are interested in it is not grounds for the
> exercise personal jurisdiction. The middle ground is occupied by
> interactive Web sites where a user can exchange information with the
> host computer. In these cases, the exercise of jurisdiction is
> determined by examining the level of interactivity and commercial
> nature of the exchange of information that occurs on the Web site.

*Zippo* at 1124 (internal citations omitted).

In *Drudge*, this Court was faced with a similar argument, that the Court lacked

jurisdiction because the defendant's website originated outside the District.  The Court

upheld jurisdiction over the website creator.  Specifically, the Court found that the

interactive nature of defendant's website supported a finding of "persistent course of

conduct" under Section 13-423(a)(4):

> The Drudge Report's web site allows browsers, including District of
> Columbia residents, to directly e-mail defendant Drudge, thus
> allowing an exchange of information between the browser's
> computer and Drudge's host computer. In addition, browsers who
> access the website may request subscriptions to the Drudge Report,
> again by directly e-mailing their requests to Drudge's host computer.
> In turn, as each new edition of the Drudge Report is created, it is
> then sent by Drudge to every e-mail address on his subscription
> mailing list, which includes the e-mail addresses of all browsers who
> have requested subscriptions by directly e-mailing Drudge through

3908922v5

his web site. The <u>constant exchange of information and direct communication</u> that District of Columbia Internet users are able to have with Drudge's host computer via his web site is the epitome of web site interactivity.

*Drudge*, 992 F.Supp. at 56 (emphasis added)(internal citations omitted), citing *Zippo*, at 1124.

Here, Edwan's website at www.wirefly-rebate.com invites comments from consumers in D.C. and elsewhere. See accompanying Declaration of Sheryl Marshall ("Marshall Decl.") for print-outs of the wirefly-rebate.com website. Edwan's website also invites consumers, including District of Columbia residents, to receive e-mails from Edwan's website with updated postings and comments. Edwan's website permits D.C. residents to register with Edwan's host computer and to request email responses to comments previously posted. Marshall Decl. at ¶¶ 3-7. Defendant's website thus permits repeat exchanges of information between the users' computers, in this District and elsewhere, and Edwan's server. This "constant exchange of information and direct communication that District of Columbia Internet users are able to have with [Defendant Edwan's] host computer via his web site is the epitome of web site interactivity" and constitutes "persistent course of conduct" within the meaning of D.C. Code § 13-423(a)(4) so as to confer specific jurisdiction on this Court. *Id.* at 57.

Edwan argues that his website is not interactive because it does not conduct any business.[1] Direct sales from a website are not required for interactivity, however, and Edwan fails to cite any authority for his argument. *See* Motion at 5. *Drudge* does not

---

[1] InPhonic questions Edwan's claim that no business was conducted any business through his website. Among other things, Edwan does not deny that he received "benefits" from Google Ads posted on his website. *See* Motion at 6 n.3.

require the transaction of business to render a website "interactive." *Drudge*, 992 F. Supp. at 56. In any event, even if, *arguendo*, Edwan's website is not deemed sufficiently "interactive," courts have held that, pursuant to the "effects test" under *Calder v. Jones*, 465 U.S. 783 (1984), a defendant's tortious act committed through the operation of a <u>passive</u> website, which was aimed at the forum and which caused plaintiff to sustain the brunt of the harm in the forum, subjects the defendant to that forum's jurisdiction. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321-24 (9th Cir. 1998); *Amway Corp. v. The Procter Gamble Co.*, No. 1:98-CV-726, 2000 U.S. Dist. LEXIS 372, *9-16 (W.D. Mich. Jan. 6, 2000); *Telco Communications Group, Inc. v. An Apple a Day, Inc.*, 997 F.Supp. 404, 407-08 (E.D.Va. 1997).

In *Panavision*, the Illinois defendant engaged in a scheme to register domain names incorporating Panavision's trademarks. The Ninth Circuit upheld jurisdiction over the defendant because defendant's actions were aimed at Panavision in California and the brunt of the harm was felt in California, where Panavision had its principal place of business. *Panavision*, 141 F.3d at 1321-24.

Similarly, in *Amway*, the court found that jurisdiction could be conferred over an Oregon defendant, who maintained a website which posted allegedly false and defamatory information about Amway, on the ground that defendant's acts intentionally targeted Amway in Michigan, and caused harm to Amway in Michagan. *Amway*, 2000 U.S. Dist. LEXIS 372, at *9-16.

Likewise, in this case, Edwan knew that his wirefly-rebate.com website would harm InPhonic; he also knew that InPhonic maintains its headquarter in the District.

3908922v5

Marshall Decl. at ¶ 10. Edwan's website is clearly aimed at injuring InPhonic by confusing and diverting customers through the unauthorized use of InPhonic's mark. InPhonic has felt the brunt of the harm in the District. Accordingly, under *Caldor*'s effects test, this Court may properly exercise jurisdiction over Defendant Edwan.

Edwan's reliance on *GTE v. Bellsouth,* 199 F.3d 1343 (D.C. Cir. 2000), is misplaced. *See* Motion at page 5. *GTE* involved a "passive website" which featured an online, non-interactive yellow page listing with no capability for users to log on or submit comments or questions. Moreover, *GTE* is also distinguishable because it did not involve trademark infringement or any tortious act that was expressly aimed at the forum. *Id.*

For the above reasons, this Court has personal jurisdiction over Defendant Edwan.

## II.    TRANSFER OF VENUE IS NOT WARRANTED.

Edwan fails to meet his heavy burden of overcoming the presumption in favor of InPhonic's choice of forum. 28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In determining a motion to transfer venue, this Court considers the following convenience factors:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious, and inexpensive.... The Court will weigh relative advantages and obstacles to fair trial.

8

*Friends for All Children, Inc. v. Lockheed Aircraft Corp.,* 717 F.2d. 602, 607 (D.C. Cir. 1983).

Transfer of venue under § 1404 is disfavored because there is a "strong presumption against disturbing plaintiff's initial forum choice." *Id.* at 606 (burden is on moving party to prove case should be transferred); *see also Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947)("The moving party "bears the burden of showing that a balancing of the interests weighs strongly in favor of the transfer. Unless the balance is strongly in favor of transfer, the plaintiff's choice of forum should not be disturbed"); *Sheraton Operating Corp. v. Just Corporate Travel*, 984 F.Supp. 22, 25-26 (D.D.C. 1997) ("the moving party has the burden of showing that the convenience of the parties and witnesses favors transfer.... Ordinarily, the plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request."). "Even if a transfer would significantly benefit [the] [defendant], the Court will not grant the motion if the result merely would shift the inconvenience from defendant to plaintiff; the net convenience must increase." *Sheraton Operating Corp.*, 984 F. Supp. at 26.

Edwan argues that the balance of the parties' interests weighs in favor of a transfer because: (1) he has no connection with the District and would have to go to great lengths to vindicate his constitutional rights because of his limited means; (2) InPhonic can be adequately and easily represented in Nebraska; (3) the claim arose in Nebraska because the key witnesses, such as Edwan, and documents are located in Nebraska; and (4) federal courts in Nebraska are "capable of interpreting and applying

9

all the federal and common law claims involved in this case" and have less congested dockets. *See* Motion at 8-9.

Edwan's argument falls far short of overcoming the above presumption. Indeed, Edwan ignores the fact that he intentionally and knowingly diluted and infringed InPhonic's mark to confuse and divert InPhonic's customers in order to cause harm to InPhonic in the District and to benefit financially from his wrongful acts. Customers who were confused or diverted by Edwan could be located anywhere in the world. Edwan's claim of inconvenience, therefore, fails to make the strong showing necessary to disturb the Plaintiff's choice of forum.

10

3908922v5

## CONCLUSION

For the above reasons, Plaintiff respectfully requests that this Court deny

Defendant's motion to dismiss and/or transfer, or alternatively, grant leave to Plaintiff

to engage in limited jurisdictional discovery.

Respectfully submitted,

PATTON BOGGS LLP

/Deborah M. Lodge/
Deborah M. Lodge  (Bar No. 393942)
Catherine Sun (Bar No. 476820)
2550 M Street, NW
Washington, DC 20037
(202) 457-6000

*Attorneys for Plaintiff*
InPhonic, Inc.

Dated:  December 15, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2005, I electronically filed the foregoing
with the Clerk of the Court using the CM/ECF system, which sent notifications of such
filing to all attorneys of record in this case.

/Sheryl Marshall/
Sheryl Marshall

3908922v5

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                           :

INPHONIC, INC.,                                  :

           Plaintiff,              :

                           :

           v.                          :          Case No. 1:05-CV-02206

                           :

JEHAD EDWAN,                                     :

           Defendant.             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## DECLARATION OF SHERYL MARSHALL

I, Sheryl Marshall, hereby declare:

1.      I am a legal assistant at Patton Boggs LLP, counsel for Plaintiff InPhonic, Inc. in this case, and submit this declaration in support of Plaintiff's Opposition to Defendant's Motion to Dismiss or Transfer Venue.

2.      This declaration is based on my visits to and review of the www.wirefly-rebate.com website and other websites referenced herein.

3.      The wirefly-rebate.com website contains an interactive forum entitled "Express your wirefly cell phone rebate experience" at which there are 32 topics and 53 posts. Attached as Exhibit 1 is a true and correct copy of a print-out on December 12, 2005 of the web page containing said interactive forum.

4.      The wirefly-rebate.com website contains an interactive forum entitled "Rate your customer service experience" at which there are 2 topics and 2 postings. *See* Exhibit 1.

5.      The wirefly-rebate.com website allows consumers to register with the website as "registered users" by completing a Registration Information form. Attached as Exhibit 2 is a true and correct copy of a print-out on December 12, 2005 of the web page containing

the Registration Information form, which can be found at www.wirefly-rebate.com/profile.php?mode=register&agreed=true.

6.     The Registration Information form for www.wirefly-rebate.com requires the user to provide his or her name, email address, password, and a statement on the user's location, occupation, and interests.  *See* Exhibit 2.

7.     The Registration Information form for www.wirefly-rebate.com allows a user to indicate his or her preference for receiving "an email when someone replies to a topic [that the registered users] have posted."  *See* Exhibit 2.

8.     The member list on wirefly-rebate.com website states that there are currently 22 registered users, who have posted a total of 55 articles.  Attached as Exhibit 3 is a true and correct copy of a print-out on December 12, 2005 of the aforementioned web page.

9.     The wirefly-rebate.com website, however, does not disclose the location of the 22 registered users, except for one member in New Jersey.  *See* Exhibit 3.

10.    The wirefly-rebate.com website lists the address of InPhonic, Inc. at 1010 Wisconsin Avenue NW, Suite 600, Washington, DC 20007.  Attached as Exhibit 4 is a true and correct copy of a print-out on December 12, 2005 of the aforementioned web page.

11.    On December 12, 2005 I accessed wirefly-rebate.com's "Memberlist" and sorted the list so that it showed, in ascending order, the date each member joined.  *See* Exhibit 3. The first registered user joined the forum on October 25, 2005 and identified "jedwan" as his username.  *Id*.

I declare on this 15h day of December, 2005, under penalty of perjury, that the foregoing is true and correct.

Sheryl Marshall
Sheryl Marshall

**EXHIBIT 1**

Case 1:05-cv-02206-RWR    Document 6    Filed 12/15/2005    Page 15 of 24

This website is not affiliated with Wirefly® in any way. The Wirefly® website is located at www.wirefly.com .
This website is non- commercial and intended for consumer information purposes only. See *Disclaimers* below.

**Wirefly Rebate, This website contains information critical of Wirefly and is not affiliated with it.**



FAQ   Search   Memberlist   Usergroups                                      Log in   Reg

| Forum | Topics | Posts | Last |
|---|---|---|---|
| **Wirefly** | | | |
| **Express Your Wirefly Cell Phone Rebate Experience** Let others learn about your cell phone rebate experience with Wirefly, please be fair and objective and provide both positive as well as negative experience. | 32 | 53 | Sun Dec 11, 2 Gues |
| **Rate Your Customer Service Experience** Rate your Wirefly cell phone customer service experience here, please be fair and objective and provide both positive as well as negative experience. | 2 | 2 | Thu Oct 27, 2 jedwa |

Mark all forums read                                                      All times are

**EXHIBIT 2**

Case 1:05-cv-02306-RWR   Document 6   Filed 12/15/2005   Page 17 of 24

This website is not affiliated with <u>Wirefly</u>® in any way. The Wirefly® website is located at <u>www.wirefly.com</u> .
This website is non- commercial and intended for consumer information purposes only. See *Disclaimers* below.



**Wirefly Rebate, This website contains information critical of Wirefly and is not affiliated with it.**

FAQ   Search   Memberlist   Usergroups                                                    Log in   Reg

**Registration Information**

## Registration Information

Items marked with a * are required unless stated otherwise.

Username: *

E-mail address: *

Password: *

Confirm password: *

### Profile Information

This information will be publicly viewable

ICQ Number:

AIM Address:

MSN Messenger:

Yahoo Messenger:

Website:

Location:

Occupation:

Interests:

Signature:
This is a block of text that can be added to posts you make. There
is a 255 character limit

HTML is <u>OFF</u>
<u>BBCode</u> is <u>ON</u>
Smilies are <u>ON</u>

## Preferences

| | |
|---|---|
| Always show my e-mail address: | ○ Yes ● No |
| Hide your online status: | ○ Yes ● No |
| Always notify me of replies:<br>Sends an e-mail when someone replies to a topic you have posted<br>in. This can be changed whenever you post. | ○ Yes ● No |
| Notify on new Private Message: | ● Yes ○ No |
| Pop up window on new Private Message:<br>Some templates may open a new window to inform you when new<br>private messages arrive. | ● Yes ○ No |
| Always attach my signature: | ● Yes ○ No |
| Always allow BBCode: | ● Yes ○ No |
| Always allow HTML: | ○ Yes ● No |
| Always enable Smilies: | ● Yes ○ No |
| Board Language: | English |
| Board Style: | NoseBleed |
| Timezone: | GMT - 6 Hours |
| Date format:<br>The syntax used is identical to the PHP date() function. | D M d, Y g:i a |

Submit  Reset

All times are

**Wirefly Rebate, This website contains information critical of Wirefly and is not affiliated with it. Forum**

Jump to: Select a forum

Powered by phpBB and NoseBleed v1.11

# Disclaimers

1. **Trademarks.** *Wirefly*® registered trademarks of InPhonic

2. **We're not affiliated with *Wirefly*®.** This web site is not affiliated with *Wirefly*®, or any particular InPhonic group. It's just an *individual* who is expressing his opinion and experience with  *Wirefly*® services.

3. **Endorsement:** This website does not endorse or recommend any commercial products, processes, or services. The views and opinions of authors expressed on this Web site do not necessarily state or reflect those of the website owner, and they may not be used for advertising or product endorsement purposes.

**EXHIBIT 3**

This website is not affiliated with Wirefly® in any way. The Wirefly® website is located at www.wirefly.com . This website is non- commercial and intended for consumer information purposes only. See *Disclaimers* below.

**Wirefly Rebate, This website contains information critical of Wirefly and is not affiliated with it.**



FAQ   Search   Memberlist   Usergroups   Profile   You have no new messages                   Log out [ slmpb ]   Wirefly

| # | Private Message | Username | E-mail | Location | Joined | Posts | Website |
|---|---|---|---|---|---|---|---|
| **Username** | | | | | | | |
| 1 | pm | jedwan | email | | 25 Oct 2005 | 1 | |
| 2 | pm | general123 | | | 27 Oct 2005 | 2 | |
| 3 | pm | elvis68 | | | 27 Oct 2005 | 4 | |
| 4 | pm | AMallavarapu | | | 01 Nov 2005 | 0 | |
| 5 | pm | swimkidsmom | | | 02 Nov 2005 | 0 | |
| 6 | pm | jeschimi | | | 02 Nov 2005 | 1 | |
| 7 | pm | lyan | | | 03 Nov 2005 | 0 | |
| 8 | pm | FightingMad | | | 09 Nov 2005 | 2 | |
| 9 | pm | madashell | email | | 14 Nov 2005 | 0 | |
| 10 | pm | GregM | | | 22 Nov 2005 | 1 | |
| 11 | pm | Guest | | | 23 Nov 2005 | 0 | |
| 12 | pm | ezland00 | | | 26 Nov 2005 | 1 | |
| 13 | pm | joemomma | | | 27 Nov 2005 | 0 | |
| 14 | pm | greg.bing | | | 29 Nov 2005 | 1 | |
| 15 | pm | scan218 | | nj | 29 Nov 2005 | 0 | |
| 16 | pm | martha | | | 30 Nov 2005 | 0 | |
| 17 | pm | coscannon | | | 01 Dec 2005 | 0 | |
| 18 | pm | slmpb | | nomad | 03 Dec 2005 | 1 | |
| 19 | pm | jcabc1 | | | 05 Dec 2005 | 0 | |
| 20 | pm | bkderm | | | 05 Dec 2005 | 1 | |
| 21 | pm | dsaitta | | | 06 Dec 2005 | 2 | |
| 22 | pm | aloh | | | 11 Dec 2005 | 2 | |

Select sort method: Joined Date    Order: Ascending    Sort

All times are GMT - 6 Hours

Jump to: | Select a forum ▾ | Go

Powered by phpBB and NoseBleed v1.11

## Disclaimers

1. **Trademarks.** *Wirefly®* registered trademarks of InPhonic

2. **We're not affiliated with *Wirefly®*.** This web site is not affiliated with *Wirefly®*, or any particular InPhonic group. It's just an *individual* who is expressing his opinion and experience with *Wirefly®* services.

3. **Endorsement:** This website does not endorse or recommend any commercial products, processes, or services. The views and opinions of authors expressed on this Web site do not necessarily state or reflect those of the website owner, and they may not be used for advertising or product endorsement purposes.



**EXHIBIT 4**

    **6**   Company made every reasonable effort to resolve
    **2**   Company did not respond

**Service Issues** (444 complaints)

  **414** Resolved
    **30**   Company made every reasonable effort to resolve

**Credit or Billing Disputes** (184 complaints)

  **159** Resolved
    **1**   Unresolved
    **1**   Delayed Resolution
    **18**   Company made every reasonable effort to resolve
    **5**   Company did not respond

**Delivery Issues** (44 complaints)

  **40** Resolved
    **1**   Company made every reasonable effort to resolve
    **3**   Company did not respond

**Refund Practices** (334 complaints)

  **313** Resolved
    **20**   Company made every reasonable effort to resolve
    **1**   Company did not respond

**Product Quality** (12 complaints)

    **12**   Resolved

**Contract Disputes** (27 complaints)

  **24** Resolved
    **1**   Unresolved
    **2**   Company made every reasonable effort to resolve

**Guarantee or Warranty Issues** (6 complaints)

    **6**   Resolved

**Repair Issues** (1 complaints)

    **1**   Resolved

The company's size, volume of business and number of transactions may have a bearing on the number of complaints rece the BBB. The complaints filed against a company may not be as important as the type of complaints, and how the compar handled them. The BBB generally does not pass judgement on the validity of complaints filed.

Additional File Information
Liberty Wireless is a division of StarNumber, Inc. StarNumber is a wholly owned subsidiary of InPhonic, Inc. Inphonic shares customer service resources with Liberty Wireless. Both companies maintain their corporate headquarters on Wisconsin Avenu Washington, DC, however, they are independently operated. A separate report is available on Starnumber, Inc. Inphonic's pr also marketed through independent affiliate companies. According to the Inphonic web site, it handles processing, shipping, l provides 24 hour customer service for its affiliate program participants.

Licensing Information
This company is in an industry that may require licensing, bonding or registration in order to lawfully do business. The Burea encourages you to check with the appropriate agency to be certain any requirements are currently being met.

Additional Information

This Business      InPhonic Inc
                 Wirefly

| Operates under the Names | wirefly.com |
|---|---|

| Addresses | 9301 Peppercorn Place, Largo, MD 20774 |
|---|---|
| | 1010 Wisconsin Avenue NW, Suite 600, Washington, DC 20007, District of Columbia County |

---

The time now is Mon Dec 12, 2005 9:33 am
**Wirefly Rebate, This website contains information critical of Wirefly and is not affiliated with it. Forum**
View una

---

### Who is Online



Our users have posted a total of **55** articles
We have **22** registered users
The newest registered user is **aloh**

In total there are **2** users online :: 0 Registered, 0 Hidden and 2 Guests   [ Administrator ]   [ Moderator ]
Most users ever online was **7** on Mon Oct 31, 2005 1:57 pm
Registered Users: None

This data is based on users active over the past five minutes

### Log in

Username: [_____]    Password: [_____]    [ Log in ]

✱  New posts    🔒  Forum is locked

**STOP**

Join the Blue Ribbon Online Free Speech Campaign!

Powered by phpBB and NoseBleed v1.11

## Disclaimers

1. **Trademarks.** *Wirefly*® registered trademarks of InPhonic

2. **We're not affiliated with *Wirefly*®.** This web site is not affiliated with *Wirefly*®, or any particular InPhonic group. It's just an *individual* who is expressing his opinion and experience with *Wirefly*® services.

3. **Endorsement:** This website does not endorse or recommend any commercial products, processes, or services. The views and opinions of authors expressed on this Web site do not necessarily state or reflect those of the website owner, and they may not be used for advertising or product endorsement purposes.